THE PEOPLE *ex rel.* ARTHUR FISHER *et al.*, Plaintiffs-Appellants, *v.* C. BERNARD CAREY, State's Attorney, Defendant-Appellee and Third-Party Plaintiff-Appellant.—(JAMES J. DOHERTY, Public Defender, Third-Party Defendant-Appellee.)

First District (3rd Division)    No. 77-538

Opinion filed September 13, 1978.

SIMON, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Matthew J. Beemsterboer, Jack L. Uretsky, and Barry M. Lewis, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago, *pro se* (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The public defender of Cook County filed this class action on behalf of persons charged or who will be charged in the circuit court of Cook County with offenses proscribed by the Illinois Criminal Code to enjoin the State's Attorney of Cook County from intercepting subpoenaed police reports. The dispute relates to the time period after arrest but prior to indictment. The State's Attorney filed a third-party action requesting that the Public Defender be enjoined from causing service of *subpoena duces tecum* upon the police department. The trial court denied both requests for relief and in a written opinion ruled that the public defender must first move for the production of police reports under the rules governing discovery before causing service of a *subpoena duces tecum* upon the police department; that the State's Attorney may not intercept police reports called for in a *subpoena duces tecum*; and that the police department must deliver the subpoenaed reports to the court. The public defender has appealed from the trial court's denial of his request for an injunction. The State's Attorney has filed a cross-appeal claiming that the trial court erred in denying his request for injunctive relief against the public defender.

We must consider two issues in this appeal. First, we must determine the propriety of the procedures set out in the trial court's ruling. Secondly, we must consider the public defender's assertion that the rules of

discovery and the process of the courts are separate and distinct and that the promulgation of the discovery rules did not abolish the right of an accused to compulsory process during the period after arrest and prior to indictment.

The undisputed facts of the present case were presented to the trial court through pleadings, affidavits, and depositions. The public defender causes *subpoenas duces tecum* to issue through the clerk of the circuit court. These subpoenas are served upon the Chicago Police Department and seek various documents. Upon receipt of a subpoena, the records division of the police department gathers the material requested and sends it to the assistant State's Attorney who is assigned to the courtroom where the particular case is going to be heard. The prosecutor reviews the documents received and then turns over to defense counsel all or portions of the material sought.

After reviewing memoranda submitted and hearing arguments of counsel, the trial court ruled that when seeking police documents the public defender first must proceed under the discovery rules. Then, if that proves unsatisfactory, the public defender may lay a proper foundation for the issuance of a *subpoena duces tecum*.

Supreme Court Rule 411 provides:

> "These rules shall be applied in all criminal cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary. They shall become applicable following indictment or information and shall not be operative prior to or in the course of any preliminary hearing." Ill. Rev. Stat. 1975, ch. 110A, par. 411.

■■ It is clear that the rules of discovery are intended to provide the procedure whereby both the defense and prosecution may obtain information to aid in their preparation of a case. In this respect, the trial court properly ruled that the public defender must first proceed under discovery before causing a *subpoena duces tecum* to issue. Its ruling ensures the orderly administration of the criminal justice system as well as providing a remedy in those instances where the procedure fails to produce the desired information.

The State's Attorney maintains that by causing *subpoenas duces tecum* to issue, the public defender is interfering with the State's Attorney's duty to ensure the flow of information from investigative agencies and of giving disclosure of certain information to criminal defendants. The State's Attorney bases his position on Supreme Court Rule 412(F) which provides:

> "The State should ensure that a flow of information is maintained between various investigative personnel and its office sufficient to place within its possession or control all material and information

relevant to the accused and the offense charged." Ill. Rev. Stat. 1975, ch. 110A, par. 412(F).

■■ We conclude from a reading of this rule along with the committee comments thereto that the State's role is to facilitate the flow of information, not to monitor and control it. Under Illinois law, it is not within the province of the prosecution to pass upon the relevancy or materiality of documents requested by the defense. (See *People v. Wolff* (1960), 19 Ill. 2d 318, 167 N.E.2d 197; *People v. Norris* (1972), 8 Ill. App. 3d 931, 291 N.E.2d 184.) If the State objects to examination of documents by the defense, it is the duty of the court to review the materials requested and in its discretion, to delete unrelated matters before turning the documents over to the defense. *People v. Wolff.*

■■ In the present case, it is undisputed that the prosecution obtains the subpoenaed documents from the police department and then turns over all or portions of the material to defense counsel. We agree with the trial court that the appropriate procedure is for delivery of documents to the court and if the State interposes any objections, the trial court shall review the documents and give to the defense that material which is relevant, material and not privileged. See *People v. Wright* (1964), 30 Ill. 2d 519, 198 N.E.2d 316.

We turn now to the public defender's request for injunctive relief against the State's Attorney. The public defender points specifically to the period subsequent to arrest and prior to indictment as the time when issuance of a *subpoena duces tecum* is necessary. He argues that interference by the State at that time can result in delays which can result in prejudice to the accused.

■■ In *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090, the United States Supreme Court set out the test to determine whether a *subpoena duces tecum* should issue. The moving party must show:

"(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' " (418 U.S. 683, 699-700, 41 L. Ed. 2d 1039, 1059, 94 S. Ct. 3090, 3103.)

The public defender asserts that he has satisfied the requirements of the foregoing test. We do not agree.

Under Illinois law police reports are not privileged documents and are subject to subpoena by the defense. (*People v. Moses* (1957), 11 Ill. 2d 84,

142 N.E.2d 1.) Thus, the first requirement is satisfied. The second requirement of the test, however, necessitates a showing that the documents cannot be procured in any other way reasonably in advance of trial. Focusing on the time period prior to indictment which the public defender asserts necessitates issuance of a *subpoena duces tecum* to obtain the reports, we believe that he has failed to satisfy the second requirement of the *Nixon* test. Under Supreme Court Rule 411, the availability of discovery procedures is limited to the period subsequent to indictment. The Committee Comments to Rule 411 explain this limitation stating: "The use of extensive discovery procedures prescribed in those rules at preliminary stages of the criminal trial would serve no valid purpose and their use is confined to post-indictment procedures." (Ill. Rev. Stat., ch. 110A, par. 411, Committee Comments, at 674 (Smith-Hurd 1971).) Since the promulgation of the discovery rules, our supreme court has adhered to the limits set out in the rules and has refused to extend the coverage of the rules. In *People v. Schmidt* (1974), 56 Ill. 2d 572, 309 N.E.2d 557, the court declined to extend application of the criminal discovery rules to misdemeanor cases, holding that discovery provided by case law and statute was adequate for lesser offenses. In that case, the court stated that a primary consideration in promulgating discovery rules was the desire to eliminate, as far as feasible, substantial variances in the scope of discovery permitted in the courts. The specific language in Rule 411 and in the comments thereto demonstrate that all procedures comparable to discovery methods may be conducted only within the confines of those rules. What the public defender advocates, in effect, is discovery prior to and during the preliminary hearing. In *People v. Horton* (1976), 65 Ill. 2d 413, 358 N.E.2d 1121, the court stated that the rules are not applicable until after indictment. The court pointed out that the preliminary hearing is not intended to be a discovery proceeding.

In accordance with our position is the ruling in *Nixon*, where the Court stated:

"A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise. The leading case in this Court interpreting this standard is *Bowman Dairy Co. v. United States,* [citation]. This case recognized certain fundamental characteristics of the subpoena *duces tecum* in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, [citation]; (2) its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials." 418 U.S. 683, 698-99, 41 L. Ed. 2d 1039, 1058, 94 S. Ct. 3090, 3103.

We believe that to grant the public defender's request for injunctive relief would unnecessarily hinder the orderly administration of justice

which the promulgation of the discovery rules was intended to effect. We agree with the trial court that the proper method by which the defense should proceed is to move for production of the reports under the discovery rules, thus reserving resort to issuance of a *subpoena duces tecum* to those instances where the State fails to comply with discovery requests. Such instances would then satisfy the second requirement of *Nixon* that the documents not be otherwise obtainable reasonably in advance of trial.

■■ We shall briefly consider the State's Attorney's contention that the trial court erred in refusing to enjoin the public defender from causing *subpoenas duces tecum* to issue. An injunction is an extraordinary remedy and the question as to its issuance is addressed to the sound discretion of the trial court. (*Crawley v. Bauchens* (1974), 57 Ill. 2d 360, 312 N.E.2d 236.) We agree with the trial court that the public defender cannot be enjoined from causing *subpoenas duces tecum* to issue if, after proceeding under the discovery rules, the State has failed to respond. The subpoena is utilized to complete discovery. The trial court did not abuse its discretion in denying the State's Attorney's request for injunctive relief against the Public Defender.

For the reasons stated, the order of the circuit court of Cook County denying the public defender's and the State's Attorney's requests for injunctive relief is affirmed. The order of the trial court which sets forth the following procedures: that the public defender must first move for the production of police reports under discovery rules before causing a service of a *subpoena duces tecum* upon the police department; that the State's Attorney may not intercept police reports called for in a *subpoena duces tecum*; and that the police department must deliver the subpoenaed reports to the court, is also affirmed.

Order affirmed.

McGILLICUDDY, J., concurs.

Mr. JUSTICE SIMON, dissenting:

The majority states that the public defender is not entitled to cause a *subpoena duces tecum* to be served upon the police department to obtain police reports until he first has moved for production under the Supreme Court discovery rules. Because Supreme Court Rule 411 provides that discovery procedures "shall not be operative prior to or in the course of any preliminary hearing" (Ill. Rev. Stat. 1975, ch. 110A, par. 411), the majority consequently denies arrested persons the right to obtain police reports until they have been formally charged with an offense. This opinion deprives arrested persons of their prehearing rights in clear

violation of fundamental fairness, without any statutory basis. Therefore, I respectfully dissent from the majority.

There is no statutory basis for the majority's conclusion that the public defender must first proceed under the rules of discovery, before causing a *subpoena duces tecum* to issue. The provision in the criminal code which states that it is the clerk of the court's duty to "issue subpoenas, either on the part of the people or the accused" (Ill. Rev. Stat. 1975, ch. 38, par. 155—2), is independent of the supreme court discovery rule quoted by the majority. The statute confers an absolute right to the issuance of subpoenas on both parties in a criminal proceeding, and that right is unaffected by the additional supreme court discovery rules. Thus, the majority has completely failed to explain why a *subpoena duces tecum* should not be used until after an accused person can take advantage of the discovery rules; that the availability of discovery procedures in this State is limited to the period subsequent to indictment is a correct statement of the law but it is irrelevant here. The right to the issuance of *subpoenas duces tecum* is simply not granted or created by a discovery rule. And the supreme court's holdings in *Schmidt* and *Horton* and the Committee Comments on Rule 411 declining to extend an accused's rights to discovery to preliminary stages of criminal proceedings have no bearing on this case. Accordingly, in view of the legislative intent, as expressed in section 7 of division XIII of the Criminal Code of 1874 (Ill. Rev. Stat. 1975, ch. 38, par. 155—2), to permit the use of subpoenas by both parties to a criminal proceeding, the force of that statute and the value of the right it confers should not be undermined by judicial fiat through the application of irrelevant discovery rules.

Moreover, fundamental notions of justice and common sense require the rejection of the majority's decision. In effect, in the guise of judicial efficiency and statutory interpretation, the majority is ruling that an arrested party cannot see a police report until after he has been formally charged with the offense for which he was arrested. And, having gone that far, the next logical step would be to preclude an accused from subpoenaing witnesses to a preliminary hearing. Such a holding ignores the crucial value a preliminary hearing may have for an arrested person in the course of a criminal proceeding against him. It is essential to the administration of justice that a defendant be given a full opportunity at this "critical stage" of the criminal process (*Coleman v. Alabama* (1970), 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999; *People v. Adams* (1970), 46 Ill. 2d 200; 263 N.E.2d 488) to prove that he is not guilty, as well as for the State to have a fair chance to demonstrate probable cause. Yet, under the majority opinion, a defendant would be deprived of the opportunity to impeach an arresting police officer by pointing to contradictions between the officer's testimony at the preliminary hearing and his original police

report, or to show contradictions between a witness' testimony and what the police report indicated he had previously told to the police. The result would be that, for this reason alone, an innocent party might languish in jail for many months. See *People v. Barney* (1965), 60 Ill. App. 2d 79, 208 N.E.2d 387.

Police reports fall within the definition of public records set forth in section 3 of the Local Records Act (Ill. Rev. Stat. 1975, ch. 116, par. 43.103) which provides:

> " 'Public record' means any book, paper, map, photograph, or other official documentary material, regardless of physical form or characteristics, made, produced, executed or received by any agency or officer pursuant to law or in connection with the transaction of public business and preserved or appropriate for preservation by such agency or officer, or any successor thereof, as evidence of the organization, function, policies, decisions, procedures, or other activities thereof, or because of the informational data contained therein."

*Nordine v. Illinois Power Co.* (1965), 32 Ill. 2d 421, 428, 206 N.E.2d 709, held that courts take judicial notice of public records. A person faced with a criminal charge should, if it assists him in establishing his innocence, have access at any stage of the proceeding to any document of which the court is permitted to take judicial notice, including particularly a nonprivileged document such as a police report.

Finally, under the supreme court ruling in *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116, the preliminary hearing testimony of a witness unavailable at trial may be introduced as evidence at trial. Given this rule, fairness demands that a defendant be given the opportunity to examine and use police records before his preliminary hearing so that his cross-examination of such a witness at the hearing can be meaningful.

Thus, there is no good reason why full disclosure of the contents of police reports should not be made available to the public defender at the preliminary hearing stage of a criminal proceeding. The majority opinion eliminates the only way the law provides for accomplishing this result— by use of a *subpoena duces tecum*. For all these reasons, then, I agree with the arguments urged on this court by the public defender, and believe that the opinion of the trial court should be reversed in part, so that the public defender is given the opportunity to obtain police reports through the service of *subpoenas duces tecum*, without first having to move for the production of such reports under the supreme court discovery rules.

In addition, I take issue with the portion of the majority opinion holding that after the preliminary hearing has been completed, if the State objects to the scope of the subpoena, it then becomes the trial court's duty to

"review the documents and give to the defense that material which is relevant, material and not privileged." I disagree with this statement primarily because as I interpret it, this gives the trial judge the authority to examine material before the defendant even sees it, and then determine what is and is not proper for the defendant's viewing. Despite the *Wolff* and *Wright* decisions the majority cites, I do not think the trial court should see any police report which the opposing party is not also allowed to see. Such a practice places a judge in an unjustifiably exalted position, too free from checks and balances—in a position too open to abuse. In addition, a defendant who, as often is the case before trial, knows more about his case than the judge, would not be able to advise the court that a police report which the judge concluded was immaterial or irrelevant, in fact also had aspects which were material and relevant. And I do not see, in any event, how a police report could be withheld from one accused of crime on the ground it was privileged. (*People v. Moses* (1957), 11 Ill. 2d 84, 89, 142 N.E.2d 1.) In short, the practice adopted by the trial court and approved by the majority although vastly better than the procedure urged by the State's Attorney, is still too susceptible to abuses caused by the inevitable human fallibilities of arrogance, ignorance and time pressures to which all human beings who exercise authority are susceptible. These are maladies from which even the wisest judges are not always immune, and for which no sure vaccination ever has been discovered.

It seems to me that the proper procedure where the State objects to the scope of a subpoena demanding production of a police record is to require the production of the record in the presence of the defendant's counsel where the State's objection can then be argued. To the extent that the circuit court's order as interpreted by the majority opinion approves the procedure of delivering subpoenaed police records to the court when the defendant or his counsel is not present, I would reverse the order.